**Douglas A. BULLIS et al., Plaintiffs-Appellants,**

**v.**

**TWENTIETH CENTURY-FOX FILM CORPORATION, a Delaware corporation, Defendant-Appellee.**

**No. 72-1211.**

United States Court of Appeals, Ninth Circuit.

Feb. 15, 1973.

W. Patrick O'Connor (argued), A. William Barlow, Honolulu, Hawaii, for plaintiffs-appellants.

William L. Fleming (argued), of Cades Schutte Fleming & Wright, Honolulu, Hawaii, for defendant-appellee.

Before ELY, CHOY and WALLACE, Circuit Judges.

WALLACE, Circuit Judge:

Plaintiffs-appellants sued their employer to recover damages for burns sustained in a fire. The fire occurred on board a mock-up vessel used by Twentieth Century-Fox Film Corporation in the filming of the movie "TORA! TORA! TORA!" The mock-up had been constructed upon three floating barges and was designed to resemble the battleships USS Nevada and USS Arizona. About March 12, 1969, the defendant moved the mock-up from the shipyard where it was built to the vicinity of Ford Island at Pearl Harbor. It remained in that area until early May, 1969, when it was dismantled.

On April 12, 1969, the plaintiffs, all off-duty servicemen, were cast as extras in the filming of a battle scene. They were hired for that day only, and the record does not indicate that any of them worked for the defendant on a previous day or on a day subsequent to the day of their injuries. They were to portray crewmen of the USS Nevada during an attack and to act confused while running up and down ladders between decks of the superstructure.

The plaintiffs went aboard the mock-up and were told about special-effects explosions and their locations. Shortly the mock-up was underway, under tow by a tug to a position a few hundred yards offshore. About an hour later, the filming began and lasted for five minutes. During the action, the plaintiffs were burned by the explosion of a nearby "fireball bomb," a device rigged to propel flaming gasoline after an initial explosion. They were given prompt medical attention and transferred to hospitals. The mock-up redocked half an hour later after a two-hour voyage of about 500 yards.

In their suit, the plaintiffs alleged that their employer had been negligent in its direction of their acting and had failed to provide them with a safe and seaworthy place to work. Jurisdiction was alleged under diversity of citizenship, general maritime law (unseaworthiness) and the Jones Act, 46 U.S.C. § 688. After discovery, the defendant-employer moved for summary judgment, arguing that, as a matter of law, the plaintiffs were not seamen within the meaning of the Jones Act. Consequently, Fox argued, they were relegated to a compensation remedy under state or federal law. The trial judge granted the motion for summary judgment. This appeal followed; we affirm.

Plaintiffs argue that they are, in fact, Jones Act seamen. Both parties agree that the classic three-part test of seaman status applies.

There are three essential elements in the term "seaman" as used in the Jones Act. First, the vessel on which the claimant is employed must be in navigation. Second, there must be a more or less permanent connection with the vessel, and third, the claimant must be aboard primarily to aid in navigation. Bodden v. Coordinated Caribbean Transport, Inc., 369 F.2d 273, 274 (5th Cir. 1966).

*See also* Offshore Co. v. Robison, 266 F.2d 769 (5th Cir. 1959); McKie v. Diamond Marine Co., 204 F.2d 132 (5th Cir. 1953); Puget Sound Freight Lines v. Marshall, 125 F.2d 876, 879 (9th Cir. 1942); Norris, Maritime Personal Injuries §§ 7–8 (2d ed. 1966). However, though the test seems simply stated, the result "depends largely on the facts of the particular case and the activity in which [the claimant] was engaged at the time of the injury." Desper v. Starved Rock Ferry Co., 342 U.S. 187, 190, 72 S.Ct. 216, 218, 92 L.Ed. 205 (1952).

The facts in this care are unique.[1] The plaintiffs were obviously extra actors, but were they also Jones Act seamen? Fox concedes that the mock-up was in navigation at the time of the accident, but challenges the plaintiffs' assertion that they satisfy the second and third elements of the test. Admittedly the Jones Act should be liberally construed "to accomplish its beneficient purposes." Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 790, 69 S.Ct. 1317, 1321, 93 L.Ed. 1692 (1949). *See also* Williams v. Tide Water Associated Oil Co., 227 F.2d 791, 794 (9th Cir. 1955), cert. denied, 350 U.S. 960, 76 S.Ct. 348, 100 L.Ed. 834 (1956). As a result of that policy, courts have held diverse persons to be seamen, including a bartender,[2] a telephone operator,[3] a clerk,[4] and a musician.[5]

---

1. The only similar case is In re Famous Players Lasky Corp., 30 F.2d 402 (S.D. Cal.1929). There the claimants were employed by the film company as seamen to sail a ship during the making of a movie. Although they acted in the movie, the court found that they were also "seamen in the true sense of that word" since they did "handle, reef, and steer" the ship. *Id.* at 404. The present plaintiffs merely acted.

2. The J. S. Warden, 175 F. 314 (S.D.N.Y. 1910).

3. Keefe v. Matson Nav. Co., 46 F.2d 123 (W.D.Wash.1930).

4. The Sultana, 23 F.Cas. 379 (No. 13,602) (D.Mich.1857).

5. The Sea Lark, 14 F.2d 201 (W.D.Wash. 1926).

■ The second requirement for seaman status is that there be a more or less permanent connection with the vessel.[6] Significantly the connection may be less permanent, but it cannot be temporary or transitory. In this case, the plaintiffs were to act for about five minutes while on board a mock-up for a cruise of some two hours. Thus their relation to the mock-up "was purely transitory—both in point of work to be done and the time of its duration." Thibodeaux v. J. Ray McDermott & Co., 276 F.2d 42, 47 (5th Cir. 1960).[7] In no sense were they permanently attached to it;[8] and consequently they cannot be Jones Act seamen. Since we have determined that the plaintiffs fail the second requirement,[9] we need not discuss the third.[10]

■ Though neither party raised the issue, the trial court's summary judgment also dismissed the plaintiffs' claim founded upon the alleged unseaworthiness of the mock-up. The duty to provide a safe place to work, that is, to furnish a vessel reasonably fit for its intended use,[11] extends to those "doing a seaman's work and incurring a seaman's hazards." Seas Shipping Co. v. Sieracki, 328 U.S. 85, 99, 66 S.Ct. 872, 880, 90 L.Ed. 1099 (1946). The warranty is not available to passengers[12] or to others who are not doing the work traditionally performed by seamen.[13] The plaintiffs have not shown that their work was the type of work traditionally done by the ship's crew. Consequently they were not entitled to a warranty of seaworthiness, and the trial judge correctly dismissed this claim also.

Affirmed.

6. The requirement might be better phrased as a permanent attachment. *See* Norton v. Warner Co., 321 U.S. 565, 573, 64 S.Ct. 747. 88 L.Ed. 931 (1944).

7. Thibodeaux was a welder; he had worked on board the barge McDermott No. 5 for four days prior to his death. *See also* Rotolo v. Halliburton Co., 317 F.2d 9, 13 (5th Cir.), cert. denied, 375 U.S. 852, 84 S.Ct. 111, 11 L.Ed.2d 79 (1963).

8. The plaintiffs emphasize the short life of the mock-up (about two months). They argue that their relationship is thus more substantial. To relate permanency to the life of the vessel distorts the question. Had the mock-up sunk during the events of April 12, 1969, or had it remained afloat in film use for another two years, the result should be no different. The connection required depends upon the relationship of the claimant to the vessel and not upon the duration of the vessel's life.

9. One court has suggested that the permanency requirement is the fundamental distinction between seamen and longshoremen. A. L. Mechling Barge Line v. Bassett, 119 F.2d 995, 998 (7th Cir. 1941). *See also* Weiss v. Central R.R., 235 F.

2d 309, 313, 315 (2d Cir. 1956) (Lumbard, J., dissenting).

10. It is not inconceivable that an actor, under certain circumstances, might be a seaman in the same manner as a musician or bartender might qualify. *See* cases cited at nn. 5–8, *supra*. For example, if a cruise ship advertised a nightly Shakespearean festival en route, then the festival actors might well be seamen. They would probably contribute "to the function of the vessel or to the accomplishment of its mission." Offshore Co. v. Robison, 266 F.2d 769, 779 (5th Cir. 1959). Such was not the case here.

11. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960).

12. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).

13. *See* United Pilots Ass'n v. Halecki, 358 U.S. 613, 617–618, 79 S.Ct. 517, 3 L.Ed. 2d 541 (1959); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 413, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Partenweederei, MS Belgrano v. Weigel, 299 F.2d 897, 901–902 (9th Cir.), cert. denied, 371 U.S. 830, 83 S.Ct. 49, 9 L.Ed.2d 67 (1962).