Willard L. JOHNSON, Plaintiff,

v.

AMERICAN PILE DRIVING CO., INC.,
a corporation, Defendant.

No. C74–96S.

United States District Court,
W. D. Washington.

May 27, 1975.

Hugh Miracle, Seattle, Wash., for plaintiff.

Donald P. Marinkovich, Seattle, Wash., for defendant.

## OPINION

BEEKS, Senior District Judge.

Johnson brings this action, seeking to recover as a member of the crew of the defendant's barge SNOHOMISH, for personal injuries suffered in a fall aboard that vessel. The resolution of Johnson's status necessitates exploration of the marginal reach of protection afforded to members of the crew of a vessel under the Jones Act and the general maritime law.

The salient facts of the case may be summarized as follows: Defendant, American Pile Driving Co., Inc. ("American") is a marine construction company of which Johnson was an employee. During the spring of 1971 American was engaged in the construction of a ferry terminal at Anacortes, Washington. The Anacortes job involved work performed both on land and on navigable waters. The marine aspects of the project were facilitated by four pieces of floating equipment owned by American; the barges SNOHOMISH and PILCHUK, the power scow KYAK, and a small "kicker" boat.

SNOHOMISH and PILCHUK are steel barges without motive power, and without sleeping or dining facilities. Each is equipped with diesel powered crane and winches. On the Anacortes job the barges were used for driving piles, for the placement of construction materials, and as platforms from which construction work on the offshore portions of the project could proceed. SNOHOMISH and PILCHUK were maneuvered around the construction site by use of the winches, anchors and mooring lines. An equipment operator was permanently assigned to each barge, and one oiler was permanently assigned to both barges, dividing his time between the two. Other personnel worked aboard SNOHOMISH and PILCHUK as required by the job to be performed on any given day.

Johnson's duties while employed by American were varied; they changed as he moved from one construction site to another, and as the work on each project progressed. In February, 1971, Johnson worked seven days aboard SNOHOMISH while the barge was out of service undergoing a major renovation. The balance of the month was spent by Johnson on land-based jobs at other sites. On March 3 Johnson worked as a pilebuck[1] aboard PILCHUK at Anacortes. For the remainder of the month he worked aboard PILCHUK on various other construction projects of one to five days duration. Johnson continued to work at short term projects through the first part of April, either land-based or aboard PILCHUK. On April 12 Johnson returned to the Anacortes site, worked for two days on SNOHOMISH and the kicker boat, and thereafter, until May 26, was assigned as foreman of the land-based decking crew.[2] From May 26 through June 16 he remained as foreman of the decking crew, although during that period his duties at times required him to work aboard PILCHUK, SNOHOMISH, KYAK, and the kicker boat.

---

1. The primary duty of a pilebuck is to work on pier construction (for which the barges ofttimes provide a floating platform). In connection therewith, pilebucks are required to load, unload and position construction materials, break out tools in the morning and stow them away at night, and assist in positioning the barges, as necessary, by use of the winches, anchors and mooring lines.

2. The decking crew constructed the pier's wooden deck upon pilings that had been previously sunk.

On June 16 Johnson left the decking crew and was reassigned as a pilebuck aboard KYAK and SNOHOMISH. On June 22, while working aboard SNOHOMISH, he slipped on the deck, fell, and sustained the injuries that underlie this action. Johnson contends that his injuries were caused by the oily condition of the deck; that American was negligent so as to create a cause of action under the Jones Act; and that SNOHOMISH was unseaworthy, allowing recovery under principles of general maritime law.

■ The Jones Act gives a "seaman" a right of action for damages arising from the negligence of his employer. Under the general maritime law the owner or operator of a vessel is liable for breach of the warranty of seaworthiness that is extended to seamen.[3] Accordingly, for Johnson to recover it must first be established that he was a seaman within the meaning of the Jones Act and the general maritime law.

■ It is not necessary to here recount the long development of liberal judicial interpretation given to the concepts of "seaman" and "vessel." It is related in thorough detail elsewhere.[4] Suffice to say that coverage under the Jones Act has recently been expanded to include "almost any workman sustaining almost any injury while employed on almost any structure that once floated or is capable of floating on navigable waters."[5] Protection under the general maritime law has similarly been given broad effect.

■■ The scope of coverage under the Jones Act, and under the general maritime law is not, however, without limit. The criteria developed for application of the law to the particular problems associated with special purpose vessels, as propounded in the leading case, *Offshore Company v. Robison*,[6] are concisely stated in *Brinegar v. San Ore Construction Company*.[7] Recovery is permissible if:

"1. . . . there is evidence that the injured workman

"(a) was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water),
"or

"(b) performs a substantial part of his work on the vessel.

"2. . . . the capacity in which he was employed or the duties which he performed contributed

"(a) to the function of the vessel,
"or

"(b) to the accomplishment of its mission,
"or

"(c) to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips."

3. *The Osceola*, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903); *Mahnich v. Southern S.S. Co.*, 321 U.S. 96, 99, 64 S.Ct. 455, 88 L.Ed. 561 (1944), and authorities cited.

4. See, *Offshore Company v. Robison*, 266 F. 2d 769 (5th Cir. 1959).

5. *Id.*, at 771. See also, *Grimes v. Raymond Concrete Pile Co.*, 356 U.S. 252, 255, 78 S.Ct. 687, 2 L.Ed.2d 737 (1958), Harlan, J., dissenting:
   "If the 'standing' requirements of the Jones Act are still to be regarded as having any real content, I can find no room for debate that [Grimes, a pile driver employed to work on a Texas Tower] is not a seaman, unless a 'seaman' is to mean nothing more than a person injured while working at sea."

6. *Supra* note 4. It must be observed that the Court of Appeals to which I am accountable, in its most recent treatment of this issue, chose to state the test concerning seaman status more narrowly than did the court in *Robison*. *Bullis v. 20th Century Fox*, 474 F.2d 392 (9th Cir. 1973). *Bullis*, however, was an extreme case, *Robison* was cited therein, and the widespread acceptance of the *Robison* test among the several courts of appeals leads me to conclude that application of the *Robison* criteria in this case is not inconsistent with the law in this circuit.

7. 308 F.Supp. 630, 637 (E.D.Ark. 1969).

The SNOHOMISH is a vessel and one of its purposes, in addition to driving piles, is to provide a platform from which marine construction may be performed. The latter was its primary function with respect to Johnson's employment. Without so deciding, the Court will assume that Johnson thus contributed to the accomplishment of the mission of SNOHOMISH.

■■ Under the *Robison* test, therefore, the issue of Johnson's seaman status turns upon the sufficiency of his connection with the vessel. It is clear that Johnson was not permanently attached to SNOHOMISH, or to American's "fleet" of four floating structures. Johnson worked on land, or on any of the four pieces of floating equipment as the exigencies of a given work project demanded. If Johnson may be found to have performed "a substantial part of his work" on SNOHOMISH, or on the four floating structures combined,[8] then he may be found to be a seaman. If, on the other hand, Johnson's connection with the vessels is transient, fortuitous or sporadic, such connection is insufficient to support a finding of seaman's status.[9] In this context, the issue of the substantiality of Johnson's connection with American's vessels, and, concomitantly, of his status, is a mixed question of law and fact.[10]

■ I have carefully considered each of the many authorities brought to my attention in the thorough briefs submitted by able counsel for both parties, and I am cognizant of the far-reaching recent developments in this area of the law. On the basis of the evidence before me, however, I am not prepared to extend seaman's status to one in Johnson's situation.

If this were a jury case, plaintiff's showing on the issue of seaman status would be sufficient to require submission to that body.[11] Sitting in Admiralty, however, the Court must assume the fact finding responsibility. My finding is that Johnson's connection with the vessels operated by American does not suffice to make Johnson a seaman. Whereas Johnson's work aboard the floating structures was not merely fortuitous, it was, at best, irregular, sporadic and transitory.

Johnson is essentially a construction worker employed in non-maritime construction. The nature and location of his work required him at times to work in and around navigable waters, and aboard one or more pieces of floating equipment. The basic character of Johnson's work, however, is not changed thereby, and in my view it would be an unwarranted extension of the law to find Johnson to be a seaman.

Although followers of Johnson's vocation are not without protection,[12] the appropriate remedy in this case is not provided by the Jones Act, nor by the general maritime law.

Accordingly, the complaint herein must be dismissed. The foregoing shall constitute my findings of fact and conclusions of law in accordance with Fed. R.Civ.P. Rule 52(a).

8. A would-be seaman may satisfy the *Robison* test by being permanently assigned to, or performing a substantial part of his work aboard more than one vessel. See, *Crafton v. Tennessee Valley Sand & Gravel Co.*, 408 F.2d 1096 (5th Cir. 1969); *Brinegar v. San Ore Construction Co.*, id. Compare, *Burns v. Anchor-Wate Co.*, 469 F.2d 730 (5th Cir. 1972).

9. *Cox v. Otis Engineering Corp.*, 474 F.2d 613 (5th Cir. 1973); *Bullis v. 20th Century Fox*, supra note 6; *Burns v. Anchor-Wate Co.*, id.; *Puget Sound Freight Lines v. Marshall*, 125 F.2d 876 (9th Cir. 1942);

*Hartzfelds v. Travelers Ins. Co.*, 369 F.Supp. 955 (W.D. La. 1974); *Salgado v. M. J. Rudolph Corp.*, 1973 A.M.C. 2470 (E.D.N.Y.); *Fontenot v. Halliburton Co.*, 264 F.Supp. 45 (W.D. La. 1967).

10. *Keener v. Transworld Drilling Co.*, 468 F.2d 729, 730 (5th Cir. 1972).

11. See, e. g., *Bennett v. Perini Corp.*, 510 F.2d 114 (1st Cir. 1975).

12. Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. (1927); 33 U.S.C. § 910(h), as amended Oct. 27, 1972.