Dianne CRAIG, Claimant-Appellant,

v.

M/V PEACOCK, on the Complaint of Oscko EDWARDS, Harry M. Tompkins, Defendants-Appellees.

Fairfield Industries, Defendant.

No. 83–2023.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 10, 1984.

Decided May 14, 1985.

Wisdom, Senior Circuit Judge, sitting by designation, filed dissenting opinion.

Henry D. Dicum, John E. Droeger, Hall, Henry, Oliver & McReavy, San Francisco, Cal., for claimant-appellant.

Graydon S. Staring, Ann Miller, Matthew P. Vafidis, Lillick, McHose & Charles, San Francisco, Cal., for defendants-appellees.

On Appeal from the United States District Court for the Northern District of California.

Before WISDOM,* DUNIWAY, and ANDERSON, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

The Memorandum decision filed the 9th day of July, 1984, 740 F.2d 973, is withdrawn. On petition for rehearing, the following opinion is substituted and the petition for rehearing is denied.

Dianne Craig appeals from the magistrate's judgment exonerating the owners of the motor vessel PEACOCK from liability in the death of her husband, Larry Lewis. We affirm.

## I. BACKGROUND

The M/V PEACOCK (PEACOCK), a former Navy minesweeper, is owned by appellees, Oscko Edwards and Harry M. Tompkins (Shipowners). During the latter part of 1979, the Peacock was chartered to Fairfield Industries, Inc. (Fairfield), for seismic oil exploration. Larry Lewis (Lewis) was employed as a technician by Fairfield. He had been employed in this capacity aboard the PEACOCK for several months. On December 23, 1979, while assisting a fellow employee in the repair of some of the survey equipment, Lewis fell overboard. After an extensive seven-hour search, begin-

---

* The Honorable John Minor Wisdom, Senior Circuit Judge for the Fifth Circuit, sitting by designation.

ning immediately after the fall and continuing with the aid of the Coast Guard, Lewis was declared missing and presumed dead.

Dianne Craig (Craig) filed suit in the Southern District of Texas for the wrongful death of Lewis, her husband. Shipowners and Fairfield then filed a limitation proceeding in the Northern District of California. As a result, the Texas proceeding was brought into the California limitation proceeding together with a California salvage action arising out of the same voyage. Fairfield was dismissed from the limitation proceeding. The magistrate held Shipowners exonerated from liability for the death of Lewis and entered judgment. This appeal followed.

## II. DISCUSSION

The central issue in this matter is what standard of care the owners of the vessel PEACOCK owed to Lewis, who was lawfully aboard the vessel. The applicable standard depends upon Lewis's status while aboard ship. If a seaman, Lewis would be entitled to claim the traditional maritime remedies: The benefit of the doctrine of seaworthiness under general maritime law; the benefit of the provisions of the Jones Act, 46 U.S.C. § 688; and the benefit of the provisions of the Death on the High Seas Act, 46 U.S.C. § 761. If Lewis were not a seaman, the only duty owed him by Shipowners was that of exercising due care under the circumstances. *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 632, 79 S.Ct. 406, 410, 3 L.Ed.2d 550 (1959).

Like the PEACOCK, vessels involved in oceanographic research carry both scientific personnel, engaged in research activities, and a crew which performs those duties usually assigned to seamen. Traditionally, some scientific personnel might have been considered seamen because they "contribute[d] to the function of the vessel or the accomplishment of its mission." *Offshore Co. v. Robison,* 266 F.2d 769, 775 (5th Cir.1959). More recently, however, Congress has addressed the special concerns of scientific personnel aboard these vessels in the Oceanographic Research Vessels Act (ORVA), 46 U.S.C. § 441, *et seq.*

At trial, the parties assumed applicability of ORVA.[1] It provides in relevant part, that scientific personnel on an oceanographic research vessel shall not be considered seamen under the provisions of Title 53 of the revised statutes and act amendatory thereof or supplemental thereto. 46 U.S.C. § 444. By virtue of ORVA's exclusionary language, it has been held that the Act prevented scientific personnel from being classified as "seamen" for the purposes of the Jones Act and also the Death on the High Seas Act, 46 U.S.C.A. § 761, *et. seq. Sennett v. Shell Oil Co.,* 325 F.Supp. 1, 6–7 (E.D.La.1971).

*Sennett* implies that Lewis might have been entitled to the doctrine of seaworthiness and, at the very least, guaranteed a safe place to work. A recent Fifth Circuit opinion, *Presley v. Vessel Carribean Seal,* 709 F.2d 406 (1983), *cert. denied,* approves the *Sennett* analysis. In *Presley,* the Fifth Circuit agreed that the Jones Act was amendatory or supplementary to Title III of the revised statutes; accordingly, although scientific personnel on oceano-

---

1. After this appeal was filed, Craig requested the magistrate to certify to this court that he would entertain a motion under Rule 60(b) Fed.R.Civ. Proc. challenging an implied finding of the PEACOCK'S status to be that of an "oceanographic research vessel" subject to the provisions of the Oceanographic Research Vessels Act, 46 U.S.C. § 441, et seq. The magistrate refused to entertain the motion for certification.

Generally, pending appeal, the trial court lacks jurisdiction to enter an order under Rule 60(b). The proper procedure is for the trial court, at movant's request, to indicate whether it would entertain or grant such a motion. *Crateo, Inc. v. Intermark, Inc.,* 536 F.2d 862, 869 (9th Cir.), *cert. denied,* 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976). Where, as here, the trial court determined that it would not entertain the Rule 60(b) motion "at that time," the order is generally considered interlocutory in nature and therefore not final and appealable. 536 F.2d at 869. *See Canadian Ingersoll-Rand Co. v. Peterson Products,* 350 F.2d 18, 27 (9th Cir.1965). We find, therefore, that Craig's 60(b) motion and arguments in support thereof are not properly before this court.

graphic vessels may not bring suit under the Jones Act, they are not excluded from remedies available under the general maritime law. *Id.* at 408–409 (citing *Sennett,* 325 F.Supp. at 6).

We are persuaded by Judge Rubin's analysis in *Sennett.* Additionally, we find no reference in ORVA to general maritime law remedies which are independent of statutory remedies afforded seamen. There is no suggestion that Congress intended ORVA to deprive scientific personnel of the protection of the general maritime law. Thus, if Mr. Lewis is a seaman, his status as one of the scientific personnel aboard an ORV would not deprive him of a warranty of seaworthiness from the shipowners.

■ In the *Estate of Wenzel v. Seaward Marine Services, Inc.,* 709 F.2d 1326, 1327 (9th Cir.1983), this court set out the test for determining seaman status as follows:

1. The vessel on which the claimant was employed must be in navigation.

2. The claimant must have a more or less permanent connection with the vessel, and

3. The claimant must be aboard primarily to aid in navigation.

Although this test is "simply stated, the result 'depends largely upon the facts of the particular case and the activity in which [the claimant] was engaged at the time of the injury.'" *Id.* (citing *Bullis v. Twentieth Century-Fox Film Corp.,* 474 F.2d 392, 393 (9th Cir.1973)). Terms such as "seaman" and "vessel" have a wide range of meaning; as such, "only a jury or trier of facts can determine their application in a particular case." *Wenzel, id.* (citing *Offshore Co. v. Robison,* 266 F.2d 769 at 779 (5th Cir.1959)).

The magistrate determined that Lewis was not a seaman, but was instead a member of the scientific personnel aboard the PEACOCK in Fairfield's employ. 46 U.S.C. § 444. In light of our rule in *Wenzel* which makes the determination of seaman status a factual inquiry, we do not find this conclusion clearly erroneous.

■ The magistrate found that Lewis was exclusively an employee of Fairfield and "at no time had he or was he performing any duties in aid of the PEACOCK'S navigation, but was performing only scientific duties on behalf of his employer, Fairfield." ER page 93. Implicit in this finding is a conclusion that the function or mission of the vessel PEACOCK was the transportation of the Fairfield seismic team. The PEACOCK'S owners did not employ Lewis; Fairfield was his employer, and Fairfield controlled the scientific survey operations on the rear deck of the vessel. Accordingly, like passengers on a cruise ship, these scientific personnel would not be considered seamen nor would they be entitled to benefit from the doctrine of seaworthiness.

Even assuming that Lewis was a seaman and entitled to the warranty of seaworthiness, the trial court determined that the PEACOCK was *reasonably fit* for the service for which she was intended. *See Smith v. American Mail Line, Ltd.,* 525 F.2d 1148, 1150 (9th Cir.1975). This finding equates that of seaworthiness set forth in *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960), and *Kermarec, supra,* 358 U.S., at 631, 79 S.Ct. at 410. Thus, even if the trial court erred in its assessment of Lewis's status, the decision could be affirmed on the basis of seaworthiness.

Appellant's challenge to the seaworthiness finding asserts error in the magistrate's finding of compliance with Coast Guard regulations on the basis of a distinction between ORVA vessels and non-ORVA vessels. The issues raised by this contention are relevant to the Rule 60(b) motion; consequently, arguments in support thereof are not properly before the court for decision at this time although they may still be raised in the district court.

■ The magistrate determined the PEACOCK to be particularly suited to her function as an oceanographic research vessel. ER page 95. Although guard rails were in place when Shipowners turned the PEACOCK over to Fairfield for its seismic

equipment operation, these rails were removed by Fairfield in order to deploy its seismic equipment. *Id.* Although Lewis fell overboard at a place where the rails had been removed, the evidence was uncertain and speculative as to whether he might not have fallen into the sea even if the rails had been in place. *Id.* at 95. Holding that the alterations to the guard rails were conducted entirely under the direction of Fairfield, the magistrate refused to extend Shipowners' responsibility to this action. *See West v. United States*, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959) (no special duty to provide a safe place to work where another party conducts and controls its own operation). Finally, the magistrate found that there was no inadequacy in the rescue operation or equipment and that there was no evidence to suggest that additional crew or equipment would have enhanced the success of the search. We conclude, therefore, that the magistrate's finding of seaworthiness is supported by the evidence and is not clearly erroneous.

CONCLUSION

For the foregoing reasons, the decision exonerating Shipowners from liability in the death of Larry Lewis is

AFFIRMED.

WISDOM, Senior Circuit Judge, dissenting.

I respectfully dissent.

The majority decision in this case does a serious injustice to scientific personnel serving on oceanographic vessels. Seamen-scientists serving as members of an ORV crew may, at times, be exposed to greater perils of the sea than are traditional seamen. Here, for example, Larry Lewis, a member of the scientific personnel of the crew of the PEACOCK, while engaged in repairing seismic survey equipment, fell overboard at a place on the PEACOCK where the guard rails had been removed for convenience in handling scientific equipment. Yet, the majority affirmed: the trier of fact had held that a seaman-scientist

on an ORV could not be a seaman. This "finding of fact" enabled the magistrate to avoid the issue of the seaworthiness of the vessel. He then simply decided that the shipowner was not negligent. By furnishing a ship reasonably fit for its intended use the shipowner had not violated his duty of due care to a non-seaman aboard ship. The majority paid lip-service to the law of this circuit and the law of all other circuits as to the seaman status of members of a ship's company when they perform services carrying out the mission of a special purpose vessel. But, for reasons I cannot discern, although the majority genuflected to this principle it turned away from the logical consequences by deciding that the magistrate's findings—none of which involved seaworthiness—were not clearly erroneous. The effect of the panel decision is to deny seamen-scientists the benefit of the general maritime law—at the will or, perhaps, whim of the fact-finder.

The majority holding could be far-reaching and devastating. It could affect adversely roustabouts and roughnecks on seagoing, oil-drilling structures, bartenders and musicians on cruise ships, maids and stewards on passenger ships, and many other members of a ship's crew who have no more to do with navigation than Larry Lewis had. These results could follow from the majority's affirmance of the magistrate's "finding of fact" that Lewis was not a seaman because "at no time had he or was he performing any duties in aid of the PEACOCK's navigation, but was performing only scientific duties on behalf of his employer", the charterer.

I.

The magistrate labored under an archaic and mistaken view of the law. He started his discussion as follows: "The threshold issue in this matter is what standard of care did the PEACOCK's owners owe to Larry Lewis who was lawfully aboard the vessel. If Lewis was a seaman he would be entitled to the benefit of the doctrine of unseaworthiness. However, if Lewis was not a seaman, then the only duty owed to

him was that of exercising reasonable care towards a person aboard the vessel who is not a member of the crew." He found that Lewis was not a seaman. Then he concluded: "By virtue of such exclusionary language of the Act [quoted in the majority opinion] it has been held that scientific personnel can not claim the benefit of the Jones Act (46 U.S.C.A. 688) *or the warranty of seaworthiness accorded to seamen*" (emphasis added). He cited one authority, *Trowell v. Western Geophysical Co.*, Civil No. 75-A-1779, S.D.Tex. (1977), *unreported*. He did not, therefore, consider the question of the seaworthiness of the ship.

At the time the magistrate made his findings, the leading case directly on point was *Sennett v. Shell Oil Co.*, 325 F.Supp. 1 (E.D.La.1971). In that case Judge Rubin of the Court of Appeals for the Fifth Circuit, then a district judge, knowledgeable in maritime law, analyzed Section 4 of ORVA and decided that a seaman-scientist aboard an ORV was precluded from asserting a Jones Act claim. Judge Rubin, however, reasoned that ORVA did not remove oceanographic ships from the classification of vessels, nor did it convert scientific crew personnel into a class of seamen to whom the vessel owed no duty. Instead, the general maritime law still applies to both the vessel and its personnel; ORVA does not affect a scientist's right to recover under the general maritime law, which includes, of course, the doctrine of seaworthiness. The majority agreed with the analysis in *Sennett*. The magistrate attempted to distinguish *Sennett* on the ground that in *Sennett* the matter was before the district court on a motion for summary judgment and that there was a dispute as to "whether the scientific person who had been lost, had in fact been given actual duties that may have been considered in aid of the vessel's navigation". This purported distinction shows that the magistrate missed the point of the case. Had the jury, on remand, found that the other "actual duties" made Sennett a seaman, there could then have been recovery *under the Jones Act, as well as under the doctrine of seaworthiness*. The magistrate re-

peated his error in his main finding: "[U]p to the time that Larry Lewis was lost over board at no time had he or was he performing any duties in aid of the PEACOCK's navigation, but was performing only scientific duties on behalf of his employer Fairfield".

The magistrate's explanation demonstrates beyond a doubt that he did not apply the proper test for determining seaman status. He did not consider that the PEACOCK was a special purpose vessel and that Lewis contributed to the function of the vessel and to the accomplishment of its mission. In the Fifth Circuit, at least since *Robison* was decided in 1959, a person is both a member of the crew and meets the test of seaman status, if he contributes "to the function of the vessel or to the accomplishment of its mission". As the majority agrees, that is also the law of the Ninth Circuit. Gilmore and Black stated the law aptly ten years ago. "A modern ship's company includes many specialists who perform duties far removed from those of the able-bodied seaman. No distinction is drawn on this ground, however: the bartender, the musicians, the maids and stewards have the same rights as the deckhands and the engine crew". Gilmore and Black, The Law of Admiralty, 282 (2d ed. 1975). Roughnecks, roustabouts, and other oil workers employed on offshore oil-drilling structures "whose duties had little or nothing to do with traditional seaman's work were seamen entitled to maintenance and cure and to damages under the Jones Act" (citing *Offshore Company v. Robison*, 266 F.2d 769 (5th Cir.1959)). *Id.*

This generally accepted principle cannot be tortured to reach the *absurdem* result that a passenger on a passenger ship is a seaman. A passenger is not a seaman. He does not resemble a scientist on an ORV. A passenger *receives* transportation and has only a transitory, non-functional relationship with the vessel on which he is traveling. He does not do anything; he does not perform any service in aid of the

mission of the ship.[1] A member of the scientific personnel on an ORV engages in an offshore seismic survey on a ship that exists only for the purpose of conducting seismic surveys. Such a person is preeminently engaged in performing a service in aid of the ship's mission. *Robison* and similar cases do not rely heavily on cases involving passenger ships, although such cases are conspicuous examples of members of a ship's company who have no navigational or traditional nautical duties. *Robison* itself involved a roughneck on a submersible drilling barge, a common situation involving accidents to off-shore oil workers. A few cases illustrate the point. Courts have held: a cook "was acting in aid and support of navigation" because such services are "essential to the successful and continuing operation" of the boat (*Mechling Barge Line v. Bassett*, 119 F.2d 995, 998 (7th Cir.1941)); a handyman on a dredge serves in aid of navigation (*Senko v. LaCrosse Dredging Corp.*, 352 U.S. 370, 374, 77 S.Ct. 415, 417, 1 L.Ed.2d 404 (1957)); a fireman on a floating derrick is a member of the crew (*Jeffrey v. Henderson Bros. Inc.*, 193 F.2d 589, 592 (4th Cir.1951)); and a welder on a derrick barge (*Ardoin v. McDermott*, 641 F.2d 277, 281 (5th Cir. 1981)) or on a pipelaying barge (*McDermott, Inc. v. Boudreaux*, 679 F.2d 452, 456 (5th Cir.1982)) is a seaman.

## II.

The majority started with the same premise as the magistrate: "The central issue" is the "standard of care the owners of the vessel PEACOCK owed to Lewis". They agree, however, with Judge Rubin's analysis in *Sennett* and with the approval of that analysis in *Presley v. VESSEL CARRIBEAN SEAL* 709 F.2d 406 (5th Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984): "[A]lthough

scientific personnel on oceanographic vessels may not bring suit under the Jones Act, they are not excluded from remedies available under the general maritime law". Majority Op., Part II. The analyses and conclusions in *Sennett* and *Presley* are completely at variance with the magistrate's approach, approved by the majority.

With deference, I suggest that the majority's error lies in relying on the conclusion that the "rule in *Wenzel*[2] makes the determination of seaman status a factual inquiry", and that the magistrate's conclusion was not clearly erroneous. Deference to the trier of fact is out of place when the factfinder applies the wrong rule of law or the wrong test to undisputed facts. Seaman status is basically a question of fact; but this general principle does not strip the trial judge of his authority to direct a verdict or to grant summary judgment, if there is no genuine issue of fact. "If there is no evidence supporting the requisites set out in *Robison*, the court may hold as a matter of law that the claimant is not a seaman. *Thibodeaux v. J. Ray McDermott & Co.*, 5 Cir.1960, 276 F.2d 42. Conversely, if the *Robison* requisites are met and there is no dispute over these factors, the court may grant a summary judgment or directed verdict declaring as a matter of law that the plaintiff is a seaman. *Producers Drilling Co. v. Gray*, 5 Cir.1966, 361 F.2d 432. See Fallon, *The Test of Seaman Status*, 55 Tul.L.Rev. 1018, at 1021–22 (1981)." *Abshire v. Seacoast Products, Inc.*, 668 F.2d 832, 835 (5th Cir.1982).

The PEACOCK was an oceanographic vessel engaged in a seismic survey. Lewis performed scientific duties in aid of the vessel's mission. Indeed, at the time he fell overboard he was engaged in repairing seismic survey equipment. If such a person is not a member of the crew of this special-purpose vessel, contributing to its

---

1. "From these two decisions we derive the principle that a man having a part to play in the mission of a special function vessel may be a seaman, while a man who has no such part and who does not participate in conducting the operations of the vessel (whether they relate to transportation or to a special function) but

merely receives transportation is not a seaman." *Stanley v. Guy Scroggins Constr. Co.*, 297 F.2d 374 (5th Cir.1961).

2. *Estate of Wenzel v. Seaward Marine Services, Inc.*, 709 F.2d 1326 (9th Cir.1983).

function or mission, and therefore a seaman and member of the ship's company, then under the general maritime law a surgeon is not a member of the crew of a hospital ship. The magistrate's finding was not only erroneous; it was grossly erroneous.

*Robison* established the following test: "There is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips." If the injured worker passed these tests, he was a seaman and a member of the crew. All circuits, including the Ninth, have reached the same conclusion *Robison* reached, or a substantially similar conclusion.[3]

*Wenzel* was not intended to narrow the test for seaman status. In *Wenzel* the court stated:

"The test for 'seaman' status under the Jones Act is threefold: (1) the vessel on which the claimant was employed must be in navigation; (2) the claimant must have a more or less permanent connection with the vessel; and (3) the claimant must be aboard primarily to aid in navigation."

709 F.2d at 1327. Courts have liberally interpreted the third requirement. The decedent, Wenzel, was a diver assigned to the SCAMP, a saucer-shaped, mobile, submersible unit, six feet in diameter and twenty inches deep, used in cleaning "sea chests" (underwater openings that pump salt water into a ship). The Court held that "Wen-

zel's status as a seaman and whether the SCAMP is a vessel are each close questions of fact which must first be determined by the trier of fact". 709 F.2d at 1328.

*Wenzel* was a close case. But in *Ramos v. Universal Dredging Corp.*, 547 F.Supp. 661 (D.Hawaii 1982) the court granted a summary judgment on the issue of whether the plaintiff was a seaman under the Jones Act. The plaintiff was employed on a dredge that cut soil, rocks, and coral from the ocean floor and pumped the material through pipes to the levee on shore. The dredge, like on ORV, was a special purpose vessel. Ramos's main responsibility was to maintain the pipes, although he had other duties. The Court held that "it would appear to be quite clear that the plaintiff here was engaged in duties which contributed to the function of the vessel or the accomplishment of its mission". 547 F.Supp. at 665. The Court therefore found "for the plaintiff *as a matter of law* on this point" (emphasis added). *Id.* at 666.

At least one district court in the Fifth Circuit has held that a scientific crew member aboard an ORV, whose duties are confined to operating and maintaining seismographic equipment, is a seaman under general maritime law and entitled to relief for an injury caused by unseaworthiness of the ORV. See *Delahoussey v. Western Geophysical Co. of America*, 476 F.Supp. 54 (S.D.Miss.1979).

The majority cite with approval *Bullis v. Twentieth Century Fox Films Corp.*, 474 F.2d 392 (9th Cir.1973). Footnote two of *Wenzel* points out that in *Bullis* the court held, on the unique facts of the case, that film extras on a mock-up battleship *acting for five minutes*, had such a transitory connection with the vessel that they could not satisfy the "permanency" part of the test for seaman status. Review of *Bullis* will show that as a result, the court did not have to apply or discuss in detail the meaning of "aid in navigation". The *Bullis* court, however, made clear that it fully

---

3. For a recent extensive discussion of seaman status, see Engerrand and Bale, *Seaman Status*

*Reconsidered,* 24 S.Tex.L.Jour. 431 (1983).

accepted the "function or mission" test of *Robison* as to "navigation":

"It is not inconceivable that an actor, under certain circumstances, might be a seaman in the same manner as a musician or bartender might qualify. *See* cases cited at nn. 5–8, *supra.* For example, if a cruise ship advertised a nightly Shakespearean festival en route, then the festival actors might well be seamen. They would probably contribute 'to the function of the vessel or to the accomplishment of its mission'. *Offshore Co. v. Robison,* 266 F.2d 769, 779 (5th Cir. 1959). Such was not the case here." 474 F.2d at 394 n. 10.

I would hold that as a matter of law a member of the scientific crew of an oceanographic vessel is a seaman. Lewis's widow may have no claim under the Jones Act, because of a literal reading of ORVA, but she has a claim under the general maritime law.

### III.

As noted and emphasized, because the magistrate found that Lewis was not a seaman, he did not even reach the question of seaworthiness; instead, having found that Lewis was not a seaman, he stated that "the standard of care owed to Lewis [that is, to a passenger or licensee] was a duty of reasonable care". The majority, however, apparently unwilling to give an unqualified blessing to the magistrate's findings, state: "Even assuming that Lewis was a seaman and entitled to the warranty of unseaworthiness, the trial court determined that the PEACOCK was *reasonably fit* for the service for which she was intended. This finding equates with that of seaworthiness set forth in *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 550, 80 S.Ct. 926,

933, 4 L.Ed.2d 941 (1960), and *Kermarec, supra,* 358 U.S., at 631, 79 S.Ct. at 410. Thus, even if the trial court erred in its assessment of Lewis's status, the decision could be affirmed on the basis of seaworthiness." And the majority "conclude that the magistrate's *finding of seaworthiness* [!] is clearly supported by the evidence and is not clearly erroneous" (emphasis added).

The issue of seaworthiness was not tried in the district court and not even considered. On the contrary, as the magistrate made clear (see earlier quotation in this dissenting opinion), he determined that Lewis had no nautical duties and was therefore not a seaman "entitled to the benefit of the doctrine of unseaworthiness". I do not understand, and I have been unable to discover what findings or facts form the basis for this court's decision that the magistrate found that the PEACOCK was seaworthy. All that the magistrate and district court found was that the ship owners were not negligent as to nonseamen. And this finding was based largely on the fact that Lewis was employed by the time charterer who exercised control over operations relating to the seismic survey—always, however, subject to the captain's control over the seaworthiness of his ship.

Some operational negligence may rise to the level of unseaworthiness, but the two concepts of negligence and unseaworthiness cannot be equated as equal; the standard of care for unseaworthiness is stricter than it is for negligence and amounts to a non-delegable warranty by the shipowner, regardless of the exercise of reasonable care. His agent is master of the ship, in non-delegable control of the ship and its operations.[4]

---

**4.** "Liability for an unseaworthy condition does not depend upon negligence or fault or blame. That is to say, the vessel owner or vessel operator is liable for all injuries and consequent damages proximately caused by an unseaworthy condition existing any time even though the owner or operator may have exercised due care under the circumstances and may have had no knowledge or notice of the unseaworthy condition which proximately

caused the damage. The vessel may be unseaworthy even though the condition which created the unseaworthiness has existed only temporarily.

"The obligation of the vessel owner to provide a seaworthy vessel is absolute and non-delegable. The owner may not avoid that obligation by delegating that duty to anyone."

The majority state that the magistrate's findings that the PEACOCK "was reasonably fit for the service for which she was intended" equates with that of seaworthiness set forth in *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960) and *Kermarec v. Transatlantique*, 358 U.S. 625, 631, 79 S.Ct. 406, 410, 3 L.Ed.2d 550 (1959). These are unusual cases for the majority to rely on; they support the position I take.

In *Mitchell v. Trawler Racer* Justice Stewart, for the Court, observed:

"*Mahnich v. Southern S.S. Co.*, 321 U.S. 96 [64 S.Ct. 455, 88 L.Ed. 561], .... stands as a landmark in the development of admiralty law. Chief Justice Stone's opinion in that case gave an unqualified stamp of solid authority to the view that The Osceola was correctly to be understood as holding that the duty to provide a seaworthy ship depends not at all upon the negligence of the shipowner or his agents.... [T]he decisions of this Court have undeviatingly reflected an understanding that the owner's duty to furnish a seaworthy ship is absolute and completely independent of his duty under the Jones Act to exercise reasonable care."

362 U.S. at 548–49, 80 S.Ct. at 931–33. Justice Stewart did say in his opinion that: "The duty is absolute, but it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use." *Id.* at 550, 80 S.Ct. at 933. But he also said: "There is no suggestion in any of the decisions that the duty is less onerous with respect to an unseaworthy condition arising after the vessel leaves her home port, or that the duty is any less with respect to an unseaworthy condition which may be only temporary." *Id.* at 549, 80 S.Ct. at 932. Here then it would make no difference that the guard rails were removed as a convenience in making seismic surveys and after the ship had left port.

*Kermarec* is favorable to my point of view. "Kermarec was not a member of the ship's company, nor of that broadened class of workmen to whom the admiralty law has latterly extended the absolute right to a seaworthy ship." 358 U.S. at 629, 79 S.Ct. at 409. "It is a settled principle of maritime law that a shipowner owes the duty of reasonable care towards those lawfully aboard the vessel who are not members of the crew." *Id.* at 630, 79 S.Ct. at 409. The question in *Kermarec* was "whether a different and lower standard of care is demanded if the ship's visitor is a person to whom the label 'licensee' can be attached". *Id.* The Court held that the shipowner owes the duty of exercising reasonable care to all persons who are on board.

The majority cite *West v. United States*, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959), for the proposition that "the alterations to the guard rails were conducted entirely under the directions of Fairfield", the charterer, and therefore the shipowners were not responsible. This is simply not the law of the sea. The captain of the ship is a king who never loses sovereignty over his kingdom nor responsibility for what happens in that kingdom. West was not a seaman nor was he on a ship in navigation. He was a shore-based employee of a ship-repair contractor who worked to reactivate a ship that had been in a mothball fleet in total deactivation for several years. The *West* ship was a dead ship; "there could be no express or implied warranty of seaworthiness to any person". *Id.* at 122, 80 S.Ct. at 192.

## IV.

In short, I can discern no finding of seaworthiness by the magistrate nor a basis for imputing such a finding to the magistrate. His finding that the PEACOCK was delivered to the charterer as "reasonably fit for the service for which she was intended" relates to negligence. It is irrelevant to whether the PEACOCK was unseaworthy then, or at a later time, or because of violations of Coast Guard regula-

Form No. 23–1. Duty to Provide Seaworthy Vessel. 1B Benedict on Admiralty (7th Ed.1984)

§ 23, at 3–59.

tions. The magistrate failed, as a matter of law, to give effect to the well-established law of this circuit and other circuits that a seaman-scientist employed on an ORV is a member of the ship's company and is entitled to the full warranty of seaworthiness—under the general maritime law. I would grant the petition for rehearing, vacate the judgment of the district court, and remand this case for a full trial.[5]

---

5. For a discussion suggesting that *Sennett* and *Presley* do not go far enough, see Note, *Remedies Available to Oceanographic Vessel Personnel in the Wake of Presley v. M/V Caribbean Seal,* 58 Tul.L.Rev. 1499 (1984). The author is concerned over the dismissal of a seaman-scientist's claim under the Jones Act. The result is inequitable and probably unforeseen by Congress. It is inconsistent with the general liberal intention of Congress, and of the courts, too, to favor those exposed to the perils of the sea. The employer was in control of the scientific operations aboard the ship. Other seamen have a remedy against *their employer;* ORV seamen-scientists have no remedy against their employer without the Jones Act. The congressional intent in enacting ORVA was only to relieve

ORV operators of regulatory burdens incident to classifying an ORV as either a cargo or passenger vessel; for example, the regulatory requirements of seaman documentation and other regulations intended for cargo or passenger vessels.

Although seamen-scientists on an ORV have all the remedies of seamen under the general maritime law, Congress was well aware that maritime workers on special-purpose vessels are treated as seamen although they may have nothing to do with navigation or traditional nautical duties. The complete withdrawal of the Jones Act remedy from seamen-scientists on ORV's is so radical a change in the law that had Congress intended mandating it, this congressional intent would have been clear and unequivocal.