Gary **GRIFFITH** and Donna Rae **Griffith, Plaintiffs,**

v.

**MARTECH INTERNATIONAL, INC., Don O. Croft, and Thomas G. Croft, Defendants.**

No. 88–01495 WDK (Sx).

United States District Court, C.D. California.

Oct. 6, 1989.

Walter Klein, Jack A. Klauschie, Jr., Wilner, Narwitz & Klein, Beverly Hills, Cal., for defendant Martech Intern., Inc.

Gerald M. Fisher, Frank C. Brucculeri, Fisher, Porter & Kent, Long Beach, Cal., for defendants Don O. Croft and Thomas G. Croft.

Randy J. Ungar, Ungar & Wheelahan, New Orleans, La., Stephen H. Tabor, Armstrong & Tabor, Los Angeles, Cal., for plaintiffs Gary Griffith and Donna Rae Griffith.

## ORDER RE DEFENDANTS CROFTS' MOTION FOR SUMMARY JUDGMENT AND RULE 11 SANCTIONS

KELLER, District Judge.

For the reasons set forth below, Defendants CROFTS' motion for summary judgment is GRANTED, and CROFTS' motion for Rule 11 sanctions is DENIED.

### I. BACKGROUND

Plaintiff Gary Griffith is a professional diver who was employed by defendant Martech International (Martech) in May 1987. At that time, Plaintiff was involved in a particular Martech diving operation aboard the vessel *Misty Eserman* during which Plaintiff contracted the "bends." The *Misty Eserman* had been "time-chartered" by Martech from Defendants Don O. Croft and Thomas G. Croft (Crofts), the owners of the vessel. In addition to the vessel under the time-charter, the Crofts also provided a three-person crew to navigate and operate the vessel. All diving equipment used in the diving operation was the property of Martech and was loaded and stored by Martech employees.

Plaintiff has brought suit against both Martech and the Crofts for his injuries, alleging negligence and unseaworthiness claims under the Jones Act, 46 U.S.C.App. § 688, and general maritime law. As the foundation for these claims, Plaintiff asserts that certain actions by Defendants were negligent and that certain equipment brought aboard the *Misty Eserman* by Martech was defective. Plaintiff's wife, Donna Rae Griffith, has additionally filed suit for loss of society and/or consortium.

The unseaworthiness claim, with its concomitant claim for punitive damages, was dismissed as to Martech by this Court by order dated November 2, 1988 on the basis that Martech had "time-chartered," as opposed to "demise-chartered," the vessel and did not therefore have the requisite control of the vessel needed for the action of unseaworthiness. Plaintiff has stipulated to a dismissal with prejudice of the negligence claims against the Crofts. Thus, all that remains of this case is a claim under the Jones Act against Martech and a claim of unseaworthiness under general maritime law against the Crofts. The Crofts now move this Court to grant summary judgment on the unseaworthiness claim. The Crofts also move for sanctions pursuant to Fed.R.Civ.P. 11 against Plaintiff, claiming that Plaintiff's action is frivolous.

### II. DISCUSSION

■ The doctrine of seaworthiness involves the absolute and nondelegable duty of an owner or operator of a vessel to provide a vessel and its appurtenances that are fit for their intended purposes. 2 M. Norris, *The Law of Seamen* § 27:2, 193–94 (4th ed. 1985); T. Schoenbaum, *Admiralty and Maritime Law* § 5–3, 164–65 (1987). The failure to meet this duty results in strict liability for any injuries to persons falling within the scope of the doctrine's

protection that are caused by such failure. 2 M. Norris, *The Law of Seamen* § 27:3, at 200.

The scope of the doctrine's protection, however, is not unlimited. The duty of a shipowner to furnish a seaworthy vessel is relational, arising out of the relationship of the shipowner and his or her sailors. 2 M. Norris, *The Law of Seamen* § 27:2, at 196. The duty therefore extends only to "seamen." 2 M. Norris, *supra,* § 27:2, at 194; T. Schoenbaum, *supra,* § 5–4, at 170. Correlatively, the duty does not extend to passengers, visitors, or other persons of similar status aboard a vessel, T. Schoenbaum, *supra,* § 5–4, at 170, who are instead owed only a duty of due care, a negligence standard. 1 M. Norris, *The Law of Maritime Personal Injuries* § 54, at 98 (3d ed. 1975).

Thus, a necessary prerequisite in the present case to Plaintiff's maintenance of his cause of action for unseaworthiness is that Plaintiff, in fact, be a seaman. Crofts contend that, as a matter of law, Plaintiff is not a seaman vis-a-vis the Crofts and that this Court should grant summary judgment on this basis. The initial inquiry that must therefore be made by this Court in consideration of Crofts' motion is whether there exists any issue of fact as to Plaintiff's status as seaman vis-a-vis the Crofts, that is, whether the Crofts owed Plaintiff an absolute duty. While seaman status is generally a question for the trier of facts, summary judgment may be granted where there exists no evidentiary basis to support a finding that the plaintiff was, or, conversely, was not a seaman at the time of injury. *Omar v. Sea–Land Service, Inc.,* 813 F.2d 986, 988–989 (9th Cir.1987); 2 M. Norris, *The Law of Seamen* § 30:8, at 353. *But see* T. Schoenbaum, *supra,* § 5–5, at 39 (1989 Supp.) ("Summary judgment or its equivalent denying seaman status is now *routine.*") (emphasis in original).

In the Ninth Circuit, a person's status as "seaman" is dependent upon three factors: "(1) the vessel on which the claimant was employed must be in navigation; (2) the claimant must have a more or less permanent connection with the vessel; and (3) the claimant must be aboard primarily to aid in navigation." *Estate of Wenzel v. Seaward Marine Services, Inc.,* 709 F.2d 1326, 1327 (9th Cir.1983); *Omar, supra,* 813 F.2d at 988; *Bullis v. Twentieth Century–Fox Film Corp.,* 474 F.2d 392, 393 (9th Cir.1973). It is this third factor upon which the Court focuses in the case at hand.

It is undisputed that the Crofts employed and supplied all of the crew necessary to navigate and operate the vessel pursuant to the time-charter by Martech. It is further undisputed that Plaintiff did not perform such work, but rather was employed by Martech, the charterer, solely to perform the duties of a professional diver in a Martech diving operation. There is no indication that the Crofts benefitted from or participated in this operation in any way other than as the provider of transportation for Martech employees and equipment to and from the diving site. It is therefore this Court's determination that, as a matter of law, the Crofts and Plaintiff did not entertain the relationship necessary to qualify Plaintiff as a seaman vis-a-vis the Crofts. Rather, as to the the Crofts, Martech employees and equipment were, respectively, passengers and cargo to which the absolute duty of the Crofts as shipowners does not extend. *See Smith v. American Mail Line Ltd.,* 525 F.2d 1148, 1150 (9th Cir.1975); 2 M. Norris, *The Law of Seamen* § 27:2, at 194 n. 14.

The facts of the action now before this Court appear to be unique in the case law as neither counsel has been able to cite any case on point that this Court might look to for guidance. Nevertheless, in support of its determination, the Court finds it instructive to compare the situation in which a vessel is demise-chartered. In such a situation, the shipowner remains liable for defects in the vessel that existed prior to the commencement of the charter. Where, however, such defects arise after the delivery of the vessel to the charterer, the shipowner is absolved of *in personam* liability. *Baker v. Raymond International, Inc.,* 656 F.2d 173 (5th Cir.1981);

Schoenbaum, *supra,* § 5–3, at 168. The Fifth Circuit explained in *Baker* that this line of distinction arose out of the view that a faultless shipowner should not be held liable. *Baker, supra,* 656 F.2d at 183.

■ Thus, this scheme of personal shipowner liability indicates that, while the application of the strict liability doctrine of seaworthiness in any particular situation is completely divorced from notions of fault, 2 M. Norris, *The Law of Seamen* § 27:3, at 200, the initial imposition of that absolute duty, or, in other words, the finding of a seaman relationship vis-a-vis the shipowner, must to some extent be bound up with the possibility of fault on the part of the shipowner. It seems, then, that where it is inconceivable that a shipowner may be responsible in some possible way for injuries sustained by a person aboard a vessel, such as where the shipowner does not control the instrumentality causing the injury or does not control or otherwise benefit from the services of the injured person, strict liability will not obtain.

This Court's granting of summary judgment in the present action is consistent with the analysis expressed above. Plaintiff was employed by Martech to participate in a Martech diving operation using Martech diving equipment. Crofts' sphere of responsibility encompassed only the navigation and operation of the vessel chartered by Martech. Plaintiff's services thus did not run to the Crofts as shipowners in the same manner as, for instance, that of a longshoreman's unloading of a shipowner's vessel in *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). This Court will not therefore expand the strict liability doctrine of unseaworthiness to circumscribe the situation at bar. As to the Crofts, Martech's employees and equipment were passengers and cargo.

■ Notwithstanding the fact that a shipowner may not be directly held to be personally liable for unseaworthy defects arising after a demise-charter of the owner's vessel, the shipowner may be indirectly held liable for such defects in that suit may be brought against *the vessel* itself in rem. *See In the Barnstable,* 181 U.S. 464, 21 S.Ct. 684, 45 L.Ed. 954 (1901); *Reed v. Steamship Yaka,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963). As the Fifth Circuit discussed in *Baker v. Raymond International, supra,* 656 F.2d at 183–84, this development in the law essentially struck a balance between two competing interests—that of ensuring that innocent victims of insolvent charterers receive compensation on the one hand, and that of ensuring that blameless shipowners are not held liable on the other.

In consideration of this state of the law, this Court acknowledges, but does not reach the issue, that Plaintiff may have an unseaworthiness claim against the vessel, *Misty Eserman.*[1] The parties were, in fact, in agreement on this position at the hearing on this matter held on October 2,

1. The Court recognizes that such a contention requires a difficult conceptualization to be made, in that Plaintiff must be viewed both as a passenger vis-a-vis the Crofts and their mission of transportation and as a seaman vis-a-vis the *Misty Eserman* and its mission as a diving boat. Nevertheless, in light of the foregoing discussion, this conceptualization seems legitimate.

The Court notes, however, that, at least in the Ninth Circuit, the contention that Plaintiff in the present case is a seaman vis-a-vis the vessel may be debatable. It is clear that "seaman" has been given a broad meaning under the doctrine set forth by the Supreme Court in *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), *see* T. Schoenbaum, *supra,* § 5–4, at 171, which Plaintiff cited in hearing as the foundation for his unseaworthiness claim. The Ninth Circuit in *Normile v. Maritime Co. of the Philippines,* 643 F.2d 1380 (9th Cir.1981), however, determined that the 1972 amendments to the Longshore and Harbor Workers Compensation Act entirely overruled *Sieracki,* at least with respect to longshoremen and harbor workers. *Id.* at 1382–83. *See* T. Schoenbaum, *supra,* § 5–4, at 172 n. 14. The Fifth Circuit has rejected this contention and has continued to take the expansive view of "seaman" formulated by that circuit in *Offshore Co. v. Robison,* 266 F.2d 769, 779 (5th Cir.1959). *See Aparicio v. Swan Lake,* 643 F.2d 1109 (5th Cir.1981); T. Schoenbaum, *supra,* § 5–4, at 172 n. 15. In the Ninth Circuit, then, any attempt to expand the doctrine of "*Sieracki* seaman" must be viewed as questionable. *See* T. Schoenbaum, *supra,* § 5–4, at 172; *Id.* at § 5–5, at 35 (1989 Supp.) ("The criticism directed at the Courts of Appeal, particularly the Fifth Circuit, because of their liberal formulation of the test for seaman status has grown apace."). *See, e.g., Craig v. M/V Peacock,* 760 F.2d 953 (9th Cir.1985) (not clearly erroneous for magistrate to conclude that researcher

1989, and much of the foregoing discussion serves only to satisfy the Court of that position. Even assuming *arguendo* that Plaintiff does possess a valid unseaworthiness claim against the *Misty Eserman,* however, summary judgment in favor of the Crofts is not precluded. The vessel is a separate and distinct defendant that is not before this Court.

In response to this contention, Plaintiff argued at hearing that although this action was in substance a claim against the vessel *Misty Eserman,* the Crofts must answer *in personam* for those claims. Were this Court sitting in the Fifth Circuit, Plaintiff would appear to be correct, which may account for the vehement disagreement between the parties' counsel on this issue at hearing. In *Baker v. Raymond International, supra,* 656 F.2d 173, the Fifth Circuit, expressly departing from prior law restricting recovery for injuries in the demise-charter scenario to actions against the charterer or vessel, *see* discussion *supra* at 184, held that "a seaman may have recourse in personam against the owner of an unseaworthy vessel, without regard to whether owner or bareboat [demise] charterer is responsible for the vessel's condition." *Id.* at 184. *Baker,* however, has not been explicitly, nor apparently implicitly, adopted by the Ninth Circuit, and, given the seemingly divergent views of the two circuits with respect to the expansion of the cause of action for unseaworthiness, *see* discussion *supra,* note 1 at 184, this Court declines to adopt the Fifth Circuit approach in the present case. The Crofts' motion for summary judgment is therefore GRANTED.

In light of the foregoing discussion, the Court does not believe Plaintiff's claim to be frivolous, and Crofts' motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure is therefore DENIED.

IT IS SO ORDERED.

---

aboard a research vessel chartered by researcher's employer was not a seaman for the purpose of bringing an unseaworthiness action against the vessel).