**Allen and Rhonda DUNBAR**

v.

**AMERICAN COMMERCIAL BARGE LINES CO., INC. and Cooper T. Smith Stevedoring Co.**

**Civ. A. 88–967–B.**

United States District Court, M.D. Louisiana.

Aug. 28, 1990.

Keith B. Nordyke, Nordyke and Denlinger, Baton Rouge, La., Charles V. Guilbault, Marcy L. Planer, Courtenay, Forstall, Guilbault, Hunter & Fontana, New Orleans, La., for plaintiffs.

Wilton E. Bland, III, Alan G. Brackett, New Orleans, La., for defendants.

Glenn Goodier, Jones, Walker, Waetchter, Poitevent, Carrere & Denegre, New Orleans, La., for American Commercial Barge..

James G. Burke, Jr., Wm. Daniel Wellons, Trial Atty., New Orleans, La., for Lumar Marine.

J.Y. Gilmore Jr., Richard Perles, New Orleans, La., for Allan George Lloyd.

RULING ON TAKO TOWING, INC.'S MOTION FOR SUMMARY JUDGMENT AND PLIMSOLL MARINE, INC.'S MOTION FOR SUMMARY JUDGMENT

POLOZOLA, District Judge.

Allen and Rhonda Dunbar filed this suit to recover for injuries sustained when Allen Dunbar tripped over a covered object on the deck of the barge on which he was working. Plimsoll Marine, Inc. (Plimsoll) and Tako Towing, Inc. (Tako) have now filed a motion for summary.

On January 27, 1987, the barge ACBL 2773 was transferred to Darrow Switching

and Fleeting (Darrow) whose fleet was located at mile 175 on the Mississippi River.[1] At approximately 12:15 a.m. that day, the barge was moved by the M/V Tako Spirit, a tug operated by Tako, to Cooper/T. Smith's crane vessel known as the Rig LST. The barge was partially offloaded and was returned to the Darrow fleet at 1:30 a.m. by the M/V Barbara, which is owned by Plimsoll. At 10:35 a.m. on the same morning, the M/V Barbara again shifted barge 2773 over to the Rig LST for further offloading. While tying a line securing barge 2773 to the LST, Allen Dunbar allegedly slipped on a ratchet which was covered over on the deck of the barge. The Dunbars allege that Plimsoll and Tako were both negligent in delivering a barge to the LST with such a tripping hazard and in failing to clean the barge thus allowing loose cargo to conceal this ratchet.[2] The Dunbars seek recovery from Plimsoll and Tako pursuant to 33 U.S.C. § 905(b) and general maritime law.

## I. THE 33 U.S.C. § 905(b) CLAIM

The Dunbars claim that Plimsoll and Tako are liable to plaintiffs under 33 U.S.C. § 905(b), which provides:

In the event of injury to a person covered under this Act caused by the *negligence of a vessel,* then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 33 of this Act.... (emphasis added)

Thus, in order for the plaintiffs to recover against Plimsoll and Tako under § 905(b), the plaintiffs must prove that the defendants: (1) are a "vessel"; and, (2) are negligent.

Plaintiffs allege that the ACBL barge 2773 was in the possession and control of M/V Tako Spirit and M/V Barbara thereby making Plimsoll and Tako a vessel. The term vessel is defined in Section 902(21) of Title 33 as any "vessel upon which or in connection with which any person entitled to benefits under this Act suffers injury or

death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent operator, charter or bare boat charterer, master, officer, or crew member". The parties agree that neither Plimsoll nor Tako were record owners of this barge. The parties further agree that neither of these companies owned the cargo on this barge. The only involvement these two defendants had in this case was that their tugboats transferred barge 2773 over to the LST. The M/V Barbara owned by Plimsoll shifted the barge twice (at 1:39 a.m. and 10:35 a.m.) while the M/V Tako Spirit owned by Tako shifted it only once (at 12:15 a.m.). Plimsoll and Tako performed these shifts pursuant to an oral agreement with Darrow Switching and Fleeting. There was no written contract or charter between ACBL 2773 and Tako or Plimsoll providing for these transfers.

This case is very similar to *Ducote v. Int'l Operating Co. of La., Inc.,* 678 F.2d 543 (5th Cir.1982). In that case, Ducote was injured while performing barge cleaning duties aboard a vessel owned by Riverway Company. Riverway had directed Ducote's employer, Burnside Terminal, to take the barge to its terminal for cleaning. Ducote sued Burnside Terminal claiming that it was the owner pro hac vice of this barge. The Court stated:

[A]lthough Burnside's tug did move the barge upon which the accident occurred, this movement was in connection with its obligation to the owner for cleaning and loading of the vessel. Those incidental operations certainly do not make Burnside the owner pro hac vice.

*Ducote, supra* at 545.

The Court concluded that since Burnside could not use the barge for its own purposes, it only had custody of the vessel for cleaning and loading and not for the purpose of maritime commerce, it was not the owner pro hac vice. Therefore, the Court found Burnside was only a bailee, not owner pro hac vice.

---

1. ACBL 2773 is owned by American Commercial Barge Lines, which has also been named as a defendant in this case.

2. See paragraphs 35 and 36 of the First Amending Complaint.

The *Ducote* Court followed *Bossard v. Port Allen Marine Service, Inc.*, 624 F.2d 671 (5th Cir.1980) and *Hess v. Port Allen Marine Service, Inc.*, 624 F.2d 673 (5th Cir.1980). In *Bossard* the Fifth Circuit stated:

> For pro hac vice ownership to be found it is generally necessary for the defendant's relationship to be that of shipowner-bareboat charterer. Such a relationship is materially different from that of shipowner-ship repairer or shipowner-stevedore. *Rao v. Hillman Barge and Construction Co.*, 467 F.2d 1276, 1277 (3rd Cir.1972). "(T)he charterer takes over the ship, lock, stock and barrel, and mans her with his own people. He becomes ... the owner pro hac vice just as does the lessee of a house and lot, to whom the demise charterer is analogous." G. Gilmore & C. Black, the Law of Admiralty, § 4–1 at 194 (2d ed. 1975); see *Eskine v. United Barge Co.*, 484 F.2d 1194, 1196 (5th Cir.1973). Though the ship repairer is a bailee, and to that extent is like a charterer, he plainly does not have the degree of control over the vessel that the charterer, the owner pro hac vice, has.

*Bossard* at 672–673.

In this case, Plimsoll and Tako merely pushed the barge over to the Rig LST at Darrow's request. They had no control over the cargo or the vessel's ultimate destination, and could not use the barge for their own purposes. It is clear that Plimsoll's and Tako's involvement in this matter was to transfer the barge in order for others to unload it.[3] Plimsoll and Tako did not have exclusive possession, control, command and navigation of the vessel and did not have the right to fully avail itself of barge 2773's services. *Helaire v. Mobil Oil Co.*, 709 F.2d 1031 (5th Cir.1983). Thus, the Court concludes that Plimsoll and Tako were contractors and not owners pro hac vice.

Plaintiffs cite and rely on *Woods v. Sammisa Co., Ltd.*, 873 F.2d 842 (5th Cir.1989), *Kerr–McGee Corp. v. Ma–Ju Marine Ser-*

*vices, Inc.*, 830 F.2d 1332 (5th Cir.1987) and *Eskine v. United Barge Co.*, 484 F.2d 1194 (5th Cir.1973). However, each of these cases are distinguishable. In *Woods*, the owner/operator failed to raise the issue of whether it was a vessel as defined by 33 U.S.C. § 902(21) and the issue was not decided by the Court.[4] In *Eskine*, the facts revealed that Cargill, Inc. was the owner pro hac vice of the barge because Cargill was in the complete and exclusive control of the barge. Cargill moved the barge to the loading dock by using its own tug, the barge was tied to the dock by Cargill employees, was in the exclusive control of Cargill while being loaded, and when loaded was moved from the dock by Cargill. Based on these facts, the Court said that this relationship was similar to a bareboat charter. Tako and Plimsoll did not have such an arrangement with the ACBL barge nor was the barge in their exclusive control. In *Kerr–McGee*, the issue was whether Kerr–McGee was liable as an owner pro hac vice. The Court stated:

> There should not be reactive immunity for time-charterers simply because their relationship to the vessel does not rise to the level of owner pro hac vice.... Instead, we focus on the legal control and responsibility imposed by the particular relationship ... of [a] party defined as a 'vessel' in section 2(21).

*Kerr–McGee* at 1343.

The Court went on to hold that a time-charterer is not liable under section 905(b) unless the cause of the harm is "within the charterer's traditional sphere of control and responsibility or has been transferred thereto by the clear language of the charter agreement." *Kerr–McGee* at 1343. In the case now before the Court, Tako and Plimsoll were not time-charterers of ACBL 2773. However, even if this test for time charterers is applied, the plaintiffs have failed to introduce evidence before the Court to show that the danger of a covered ratchet is within the charter's traditional control or that a charter or contract existed

---

**3.** *Hess v. Port Allen Marine Service, Inc.*, 624 F.2d 673 (5th Cir.1980).

**4.** See *Woods* at 846.

which shifted responsibility over the cargo to Tako or Plimsoll.

This matter is before the Court on a motion for summary judgment. Since the Dunbars bear the burden of proof at trial, they must come forth with evidence to show that an issue of fact is in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court finds that the Dunbars have not satisfied this burden of proof. Tako and Plimsoll were not owners of this barge and clearly did not have the possession and control of the barge so as to make them owners pro hac vice. Thus, without addressing the question of duty and negligence, the Court finds that Tako and Plimsoll are not vessels under 33 U.S.C. § 905(b). Therefore, these defendants' motion for summary judgment should be granted as to the § 905(b) claim.

## II. GENERAL MARITIME LAW CLAIM

 The Dunbars also seek to recover against Tako and Plimsoll for negligence pursuant to general maritime law. In order to prove a claim in negligence, the plaintiffs must show that Tako and Plimsoll owed them a duty which was breached and caused them actual damage. The Supreme Court in *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981) set forth the duties of a vessel owner to the employees of a stevedore. The Supreme Court set forth three duties of the vessel owner: (1) have the ship and its equipment in such condition that the stevedore may carry on its cargo operations with reasonable safety; (2) once the stevedore begins its operations, the vessel owner has no duty to supervise its work or to inspect the area assigned to the stevedore, unless contract provision, positive law or custom impose such a duty; (3) to protect the stevedore's employees during the stevedore's operations if the owner has actual knowledge that the ship or its gear poses a danger to the stevedore's employees and that the stevedore is

not acting to correct it.[5] As the Court previously noted, Tako and Plimsoll were not the owners of this barge. Thus, the Court must determine whether the non-owners of a vessel have the same duties imposed upon them as do owners of a barge.[6] In *Woods v. Sammisa Co., Ltd.*, 873 F.2d 842, 849 (5th Cir.1989), the Court held that an owner/operator of a vessel does owe a duty to a stevedore and longshoreman with respect to cargo operations that are solely within the stevedore's control. In considering the liability of the vessel's owner, operator and the time-charterer. The *Woods* Court stated:

> Each party exercised some control over cargo operations and could have acted to ensure that the cargo was loaded in such a manner that cargo operations would proceed with reasonable safety. *Each such party therefore was charged with a duty to third parties* regarding the manner in which the cargo was stowed. (emphasis added).

*Woods* at 857–858.

The question, therefore, is whether Tako and Plimsoll exercised sufficient control over cargo operations on barge 2773 to so burden them with such a duty. Tako and Plimsoll did have some control over the movement of the barge. However, this type of control did not give them control over the barge's cargo operations. Pursuant to the oral agreement with Darrow Switching and Fleeting, Tako and Plimsoll were hired to transport the barge 2773. However, Tako and Plimsoll were not paid or employed to move, handle or maintain the cargo aboard the barge, straighten the deck of the barge, clean any spilled or free flowing cargo on the barge or for loading and unloading any of the cargo at the Rig LST. Therefore, the Court concludes that neither Tako nor Plimsoll controlled the cargo operations on board this barge. Since they did not have control over the cargo operations, they cannot be held liable to plaintiff pursuant to general maritime law principles.

---

**5.** See also *Duplantis v. Zigler Shipyards, Inc.*, 692 F.2d 372 (5th Cir.1982).

**6.** According to the oral agreement, neither Plimsoll nor Tako had a duty to inspect the cargo aboard the vessel.

Therefore:

IT IS ORDERED that Plimsoll Marine, Inc. and Tako Towing Company's motions for summary judgment on the plaintiffs' 33 U.S.C. § 905(b) and general maritime negligence claims be and each is hereby GRANTED.