50 F.Supp.2d 925 (1999)
In the Matter of the Complaint of LEWIS & CLARK MARINE, INC., as Owner of the M/V HELEN B for Exoneration from or Limitation of Liability.
No. 4:97CV2214 RWS.
United States District Court, E.D. Missouri, Eastern Division.
May 14, 1999.
*926 Theodore H. Lucas, James V. O'Brien, Richard J. Behr, Lewis and Rice, St. Louis, MO, for Lewis & Clark Marine, Inc., plaintiff.
Terese A. Drew, Hinshaw and Culbertson, St. Louis, MO, for City of Alton, Alton Exposition Com'n, movants.
William P. Gavin, Gavin Law Firm, Belleville, IL, for Gerardo Hernandez, Juana Hernandez, claimants.
Steven C. Repel, Berg and Repel, Chicago, IL, for Marionete Duty, Administrator of the Estate of, aka, Marvin James DaFromboise, Jr., claimant.

*927 MEMORANDUM AND ORDER

SIPPEL, District Judge.
This matter is before the Court on Lewis & Clark Marine, Inc.'s ("L & C") Motion for Summary Judgment. The motion is fully briefed and the Court has reviewed both the briefs and the materials submitted in support thereof.
Because the Court does not find that L & C breached any duty owed to the decedents, the Motion for Summary Judgment will be granted.

Background
When considering a motion for summary judgment, the Court must view all facts in the light most favorable to the non-moving party. Fed.R.Civ.P. 56(c). See generally, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
This action arises out of an explosion that occurred on a barge towed by the M/V HELEN B on July 3, 1997. On that date the M/V HELEN B was hired to tow two barges to Alton, Illinois at or near Mile 203 on the Upper Mississippi River. The M/V HELEN B was hired by the City of Alton, Illinois and/or the Alton Exposition Committee to move the two barges from Hartford, Illinois to Alton, Illinois and hold the barges in place while a fireworks exhibition was conducted from the outermost barge. The crew of the M/V HELEN B was not hired to participate in the fireworks display in any way. Their duties were solely to pick up the barge, tow it to the designated spot, hold it there while the display took place, and return it to the dock after the display had ended.
The fireworks display was sponsored by the City of Alton, Illinois. Fireworks Partners, Inc. d/b/a Mad Bombers ("Fireworks Partners") was engaged as the fireworks expert to orchestrate the display. Decedents were employed by Fireworks Partners to conduct the fireworks display from the barge.
On July 3, 1997, the M/V HELEN B towed the two barges from Hartford, Illinois to Alton, Illinois. The M/V HELEN B was in the process of holding the barges at the specified location when the explosion occurred on the outermost barge. The explosion occurred approximately fifteen minutes into the fireworks display. The explosion was apparently caused by a misfired fireworks shell. There is no allegation that the actions of the M/V HELEN B, either in towing the barge or in holding it in place during the display, caused the explosion.
Marvin James Lafromboise a/k/a Rick Cisneros, of Markham, Illinois, died on the barge as a result of burn and/or explosion injuries. Two other individuals, Ralph Duty and Raymond Hernandez, both of Chicago, Illinois, drowned after they were, blown off the barge[1]. The bodies of Ralph Duty and Raymond Hernandez were recovered from the waters of the Mississippi River.
The Defendants/Counterplaintiffs (collectively referred to as "the Claimants") in this action are the survivors of Rick Cisneros ("claimant Duty") and Raymond Hernandez ("the Hernandez claimants").
On October 31, 1997, L & C, the owner of the M/V HELEN B, filed its Complaint in admiralty for Exoneration from or Limitation of Liability stemming from the explosion.
The Hernandez claimants filed their Answer and Claims in response to L & C's Complaint on December 31, 1997. On November 13, 1998, the Hernandez claimants filed a First Amended Answer and Claims. The First Amended Answer and Claims contains four counterclaims. Counts I and II allege L & C breached its duty of *928 seaworthiness under the Jones Act. Counts III and IV allege common law negligence.
Claimant Duty filed an Answer to L & C's Complaint for exoneration on December 31, 1997. On November 4, 1998, claimant Duty filed an Amended Answer and Counterclaim. That Amended Answer and Counterclaim contains two counts, both of which allege L & C breached its duty of seaworthiness under the Jones Act. After the close of discovery, on March 4, 1999, claimant Duty filed a Motion to File an Amended Counterclaim Instanter asserting two new common law negligence claims. That motion was denied.
L & C has filed a motion for summary judgment asserting that the decedents were not "seamen" as defined by the Jones Act. Therefore, L & C argues, it did not have a duty of seaworthiness to the decedents. Further, L & C argues, it did not have a duty to the decedents under general maritime or state law which could result in its liability for their deaths.

Legal Analysis

I. Legal Standard
As stated above, when considering a motion for summary judgment, the Court must determine whether the record, when viewed in the light most favorable to the non-moving party, shows any genuine issue of material fact. Fed.R.Civ.P. 56(c). See generally, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When faced with a motion for summary judgment, the non-moving party may not rest upon the mere allegations or denials of its pleadings alone, but must introduce affidavits or other evidence showing there exists a genuine issue of material fact that requires resolution by the trier of fact. Jetton v. McDonnell Douglas, Corp., 121 F.3d 423, 427 (8th Cir.1997); Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir.1987). A plaintiff facing a motion for summary judgment must establish through affidavits or other evidence, that there exists a genuine issue of material fact on each essential element of his claim. Id.

II. Duty of Seaworthiness Under the Jones Act
L & C is not liable to the Claimants for damages under the Jones Act because the decedents were not "seamen" as that term is defined in the Jones Act.
The Jones Act provides a cause of action in negligence for "seamen" injured in the course of their employment. 46 U.S.C.App. § 688(a). Under the Jones Act, shipowners owe a duty of seaworthiness to those employees with seaman status. Chandris, Inc. v. Latsis, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). Employees must meet two criteria to attain seaman status. Id. at 368, 115 S.Ct. 2172. First, the employee's duties must contribute to the function of the vessel or to the accomplishment of its mission. Id. Second, the employee must have a connection to a vessel in navigation that is substantial in terms of both its duration and nature. Id.
The second criteria includes a temporal element. Id. at 371, 115 S.Ct. 2172. The Chandris Court held that a worker, who spends less than 30% of his time in the service of the vessel in navigation, should not qualify as a seaman under the Jones Act. Id. Moreover, while the connection may be less than permanent, it cannot be temporary or transitory. Bullis v. Twentieth Century-Fox Film Corp., 474 F.2d 392, 394 (9th Cir.1973).
In Bullis v. Twentieth Century-Fox Film Corp., the Ninth Circuit analyzed the status of workers similarly situated to the decedents in the present case. The Bullis plaintiffs were off duty service men cast as extras for the filming of the movie TORA! TORA! TORA! Bullis, 474 F.2d at 392-93. They were hired to portray the crew of the USS Nevada during the bombing of Pearl Harbor. Id. The filming took place on a mock-up barge located near Ford Island at Pearl Harbor. Id. The extras were only *929 hired for this one filming sequence and the entire duration of their cruise was to last two hours. Id. The filming itself took five minutes. Id. During the filming, a fire-bomb exploded and the plaintiffs were injured. Id.
Pointing to the transitory nature of the plaintiffs' connection to the barge, the Bullis court concluded that the plaintiffs were not seamen for purposes of Jones Act protection.
The reasoning of the Bullis court is persuasive. Applying that reasoning to the facts of this case, the Court reaches the same conclusion as that reached by the Bullis court. The decedents were not permanently connected to the barge on which they were injured. They were hired to board the barge for a short period of time to conduct a fireworks display. After the fireworks display was complete, they were to return to land and their connection to barge was to be terminated. The record is not clear about the anticipated duration of the decedents' presence on the barge, but the time necessary to move the barge into place, conduct the fireworks display, and return the barge to land is measured in hours not days.
The connection between the decedents and the barge was clearly transitory in nature. As such, the decedents cannot qualify as seamen under the Jones Act. Absent status as seamen, L & C did not owe a duty of seaworthiness to the decedents.
Summary judgment is granted to L & C on Counts I and II of the Hernandez claimants' First Amended Answer and Claims and both counts of Duty's Amended Answer and Counterclaim.

III. Possible Duty to Decedent Hernandez Under General Maritime Law
Under general maritime law, L & C is not liable for the injuries to decedent Hernandez because L & C was not in control of the activities on the barge on which Ramon Hernandez was working. Because L & C was not in control of the activities on the barge, L & C did not owe a duty of reasonable care regarding the manner in which the fireworks display was conducted.
In addition to the duties conferred upon vessel owners by the Jones Act, tug boat owners owe duties to passengers upon the tug itself, as well as to the barges they are maneuvering.
With regard to the barge it tows, a tug vessel owner owes a duty "to exercise such reasonable care and maritime skill as prudent navigators employ for the performance of similar service." Stevens v. The White City, 285 U.S. 195, 202, 52 S.Ct. 347, 76 L.Ed. 699 (1932). A contract for towage places the navigation of the barge under the authority of the tug vessel. Id. The tug operator owes a duty of reasonable care in navigation. Id. For all purposes other than navigation, the towed vessel "remains under the authority of its master; and, in emergency, the duty is upon him to determine what shall be done for the safety of his vessel and her cargo." Id. The M/V HELEN B's duty of reasonable navigation is not implicated in the present case because the claimants' damages are not alleged to have been caused by unreasonable navigation of the barge.
Tug vessel owners also have a duty as owners of a vessel to "exercise reasonable care towards those lawfully aboard the tug vessel who are not members of the crew." Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 629, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). L & C argues that this duty is also not applicable to it because it was not the owner of the vessel on which Ramon Hernandez was injured (the barge). The Hernandez claimants argue that L & C was the owner pro hac vice of the barge.
A tug may indeed be considered the owner pro hac vice of its tow if has obtained possession of the barge under a "bareboat charter." Eskine v. United Barge Co., 484 F.2d 1194, 1196 (5th Cir. 1973); Reed v. Steamship Yaka, 373 U.S. 410, 412, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963). A bareboat charter transfers full *930 possession and control of the vessel to the charterer. Reed, 373 U.S. at 412, 83 S.Ct. 1349. The chartered vessel is under the complete and exclusive control of the chartering party. Eskine, 484 F.2d at 1196. It is not enough to have control over the barge's movement, if control over the barge's operation rests somewhere else. Dunbar v. American Commercial Barge Lines Co., Inc., 746 F.Supp. 1303, 1306 (M.D.La.1990). Liability for activities aboard the tow vessel will only attach if the tug vessel had control over those activities. Id.
The facts of the Dunbar case are similar to those presented by the decedents in this case. Dunbar was a stevedore hired to unload cargo from a barge being towed by the defendant tug lines. Dunbar, 746 F.Supp. at 1304. During the unloading, Dunbar slipped on a ratchet on the deck of the barge. Id. The ratchet had been covered over by materials on the deck. Id. Dunbar alleged that the tug lines were negligent in delivering the barge with a tripping hazard, and in failing to clean the barge to expose the hazard. Id.
The Dunbar court recognized that if the defendant tug lines had owned the barge, they would have had a duty of reasonable care, but in the Dunbar case the tug lines did not own the barge. Dunbar, 746 F.Supp. at 1306. The Dunbar court then questioned whether the defendant tug lines had exercised sufficient control over the barge to burden them with a duty of reasonable care regarding the activities taking place there, in addition to their duties regarding safe navigation. The Dunbar court distinguished between control over movement, which the tug lines did have, and control over the cargo operations on the barge, which the tug lines did not have. Id. Because the tug lines did not have control over the cargo operations on the barge, the Dunbar court found that the tug lines did not owe a duty of reasonable care to the plaintiff who was injured as a result of those activities. Id.
The reasoning of the Dunbar court is equally applicable here. There is no question in the instant case that L & C controlled the navigation of the barge on which the decedents were working. L & C did not however control the fireworks display operation that was taking place on the barge. Fireworks Partners hired their own crew to conduct the fireworks display on the barge. L & C did not have any presence on the barge. L & C's sole job was to move the barge into position, hold it there during the display, and then move it back to the marina.
L & C did not control the fireworks activities on the barge. L & C was not the owner pro hac vice of the barge on which the decedents were working. Under general maritime law, L & C did not owe a duty of reasonable care regarding the manner in which the fireworks activities were conducted.

IV. Possible Duty Under Illinois Common Law
L & C is not liable under Illinois common law for the injuries to decedent Hernandez because L & C was not in charge of the fireworks operation which caused those injuries.
Wrongful death actions stemming from a death in navigable waters are governed by applicable state law. Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996). L & C argues that Illinois law governs the Hernandez claimant's wrongful death claims. The Hernandez claimants do not dispute this.
The Hernandez claimants assert that L & C is liable to them for the wrongful death of Ramon Hernandez because it negligently operated and maintained the fireworks display on July 3, 1997.
Under Illinois law, a plaintiff can only prevail on a claim of negligent failure to inspect, operate, manage, maintain, control and/or supervise a job site, if he shows that the defendant was "in charge" of the work. Church v. General Motors Corp., 33 F.3d 805, 808 (7th Cir. *931 1994). As discussed in detail above, L & C did not control any of the display activities taking place on the barge on July 3, 1997. Therefore, L & C is not liable under Illinois law for injuries stemming from those display activities.
Summary judgment in favor of L & C on Counts III and IV of the Hernandez claimants' First Amended Answer and Claims is appropriate.

Conclusion
L & C did not owe a duty of seaworthiness to Ramon Hernandez or Rick Cisneros. Neither did L & C owe duty of reasonable care to the decedents under general maritime or Illinois state law. Summary judgment on all claims against L & C in this action is appropriate.
Accordingly,
IT IS HEREBY ORDERED that Lewis & Clark Marine's Motion for Summary Judgment [Doc. # 79] is GRANTED.
NOTES
[1] Prior to beginning the fireworks display the decedents were offered personal floatation devices by the crew of the M/V HELEN B. The decedents refused to take the personal floatation devices. The M/V HELEN B agreed to get under way only after the decedents agreed to stay within the "combing" of the barge.